UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD T. STANFIELD,<br><br>        Plaintiff,<br><br>   v.<br><br>METROPOLITAN CASUALTY INSURANCE COMPANY,<br><br>        Defendant. | CASE NO. C21-5092 BHS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND |

This matter comes before the Court on Plaintiff Richard Stanfield's motion to remand. Dkt. 12. The Court has considered the briefings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. FACTUAL & PROCEDURAL BACKGROUND

Stanfield and Suzanne Hougland were in an automobile accident on April 5, 2015 allegedly caused by an uninsured motorist. At the time, Hougland and Stanfield were insured together under a shared policy with Metropolitan; the policy provides $100,000 per person and $300,000 total in uninsured motorist ("UIM") coverage. Metropolitan

asserts that Hougland and Stanfield settled with the at-fault driver for policy limits of $15,000 and then pursued claims for bodily injury under their UIM coverage.

After a demand from Hougland and Stanfield that Metropolitan pay the full limit of $100,000 to each of them for their bodily injuries, Metropolitan made advance payments to $58,000 and $50,000 to Hougland and Stanfield, respectively. Dkt. 16-7, 16-8. Metropolitan made these advance payments without execution of any release. *See* Dkt. 15 at 3.

Hougland and Stanfield then filed a joint complaint in Pierce County Superior Court, seeking to pursue the remainder of their uninsured motorist coverage (i.e., $42,000 for Hougland and $50,000 for Stanfield). *See Hougland et al. v. Metropolitan Casualty Ins. Co.*, 3:20-cv-06137-TSZ, Dkt. 1-1 (W.D. Wash. 2020). Metropolitan removed the case to this Court on the basis of diversity jurisdiction, *id.,* Dkt. 1, and Hougland and Stanfield voluntarily dismissed their complaint, *id.*, Dkt. 2.

Hougland and Stanfield then refiled their claims in Pierce County Superior Court, albeit separately. *See* Dkt. 1-1; *Hougland v. Metropolitan Causaulty Ins. Co.*, 3:21-cv-05090-BHS (W.D. Wash.), Dkt. 1-1. Metropolitan again removed the two cases on the basis of diversity. Dkt. 1; *Hougland*, 3:21-cv-05090-BHS, Dkt. 1.

Stanfield moves to remand the case, arguing that removal was improper as the amount in controversy does not reach the threshold $75,000 to confer diversity jurisdiction.[1] Dkt. 12. He also seeks an award of fees and costs. *See id.* at 6–7.

---

[1] Metropolitan additionally moved to consolidate *Hougland* with this case. *Hougland*, 3:21-cv-05090-BHS, Dkt. 8. That motion is addressed in a separate order.

## II.  DISCUSSION

**A.  Motion to Remand**

"A defendant generally may remove a civil action if a federal district court would have original jurisdiction over the action." *Allen v. Boeing Co.*, 784 F.3d 625, 628 (9th Cir. 2015). Federal courts have original jurisdiction over, *inter alia*, cases where there exists a complete diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Defendants who remove cases on the basis of diversity jurisdiction must prove, by a preponderance of the evidence, that removal is proper. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010). There exists a "strong presumption against removal jurisdiction," which "must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (internal quotation omitted); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (courts should "strictly construe the removal statute against removal jurisdiction"); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941) ("Due regard for the rightful independence of state governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which [§ 1441] has defined.").

Metropolitan asserts that the amount in controversy is met because (1) Stanfield seeks attorney fees pursuant to *Olympic Steamship*; (2) he implicitly asserts claims of bad faith; (3) the amount in controversy is not reduced by pre-litigation advances; and (4) Hougland and Stanfield have aggregating damages for the purposes of diversity. The Court will address each argument in turn.

**1.    *Olympic Steamship* Fees**

In Washington, "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." *Olympic Steamship v. Centennial Ins. Co.*, 117 Wn.2d 37, 53 (1991). "[T]he rule articulated in *Olympic Steamship* is applicable where the insurer forces the insured to litigate questions of coverage . . . ." *McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 33 n.6 (1995). "'Coverage means the assumption of risk of occurrence of the event insured against before its occurrence.'" *Kroeger v. First Nat. Ins. Co. of Am.*, 80 Wn. App. 207, 210 (1995) (quoting *Ryan v. Cuna Mut. Ins. Soc'y*, 84 Wn.2d 612, 615 (1974)). "Coverage disputes include both cases in which the issue of any coverage is disputed and cases in which 'the extent of the benefit provided by an insurance contract' is at issue." *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 147 (1997) (quoting *McGreevy*, 128 Wn.2d at 33).

On the other hand, "dispute[s] over the value of the claim presented under the policy . . . are not properly governed by the rule in *Olympic Steamship*." *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280 (1994). "Where the insurer admits coverage but, in good faith, denies or disputes the value of the claim, [*Olympic Steamship*] does not authorize fees." *Solnicka v. Safeco Ins. Co. of Illinois*, 93 Wn. App. 531, 533 (1999).

> Often, however, there is a fine line between a coverage dispute and a claim dispute. The insurer may admit some coverage, but dispute the scope of coverage and then contend the case involves a claim dispute. Coverage disputes include cases in which coverage is denied and those in which the extent of the benefit is disputed. Coverage questions focus on such

> questions as whether there is a contractual duty to pay, who is insured, the type of risk insured against, or whether an insurance contract exists at all.
> Claim disputes, on the other hand, raise factual questions about the extent of the insured's damages. They involve factual questions of liability, injuries, and damages and are therefore appropriate for arbitration.

*Id.* at 534 (citations omitted).

While Stanfield's complaint sets out a demand of *Olympic Steamship* fees in praying "for an award of reasonable attorney's fees and costs, pursuant to *Olympic Steamship* and its progeny, and/or pursuant to contract law, common law or equity," Dkt. 1-1 at 4, he argues that "the dispute is currently about only the value of these claims, not whether coverage exists," Dkt. 18 at 4. It is notable that Metropolitan does not classify the case as a coverage dispute; indeed, it appears that Metropolitan has conceded that Stanfield is covered by the UIM policy up to $100,000. *See* Dkt. 16-1. Metropolitan further states that it "disputed [Stanfield's] asserted value of the claims, and attempted to negotiate a reasonable settlement." Dkt. 15 at 2.

Metropolitan provides evidence and lengthy analysis on Stanfield's *Olympic Steamship* fees, but it has not established by a preponderance of the evidence that this case is anything but a claim dispute. Stanfield alleges that Metropolitan "agreed that [he] was not fully compensated by the liability limits paid by the tortfeasor's insurer and paid $58,000 of the UIM limits" and that he "was not fully compensated and is entitled to pursue claims for the remaining UIM benefits." Dkt. 1-1, ¶¶ 3.10, 3.11. Based on these allegations, it is a more reasonable assumption that this case involves "factual questions of liability, injuries, and damages" instead of "interpretation of the meaning or

application of a policy . . . ." *King Cty. v. Vinci Const. Grands Projets*, 191 Wn. App. 142, 188–89 (2015) (internal citations and quotations omitted).

The Court thus concludes that, at this stage, Stanfield brings a claim dispute against Metropolitan and that *Olympic Steamship* fees are unavailable although pled. As such, the speculated attorney's fees cannot aggregate to satisfy the amount in controversy.

### 2. Claims of Bad Faith

Metropolitan next argues that Stanfield complaint satisfies the amount in controversy because his "complaint is so vaguely and broadly pled that it encompasses extracontractual claims of bad faith." Dkt. 15 at 14. Relying on communications between counsel, Metropolitan argues that Stanfield threatened to pursue extracontractual bad faith and Insurance Fair Conduct Act claims. While Stanfield's complaint is sparse, the Court agrees that he has not alleged any IFCA violations or extracontractual claims. Metropolitan's argument that the Court should read in such claims is unsupported by any legal authority.

Further, "a defendant who fails in an attempt to remove on the initial pleadings can file a removal petition when subsequent pleadings or events reveal a new and different ground for removal." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 789 (9th Cir. 2018) (internal quotations omitted). If Stanfield were to amend the complaint to bring extracontractual claims, resulting in an amount in controversy greater than $75,000, Metropolitan would have the opportunity to remove the case to federal

court within 30 days of receiving notice of amendment. *See id.* at 788. Therefore, the "additional" bad faith claims cannot be included in the amount in controversy.

### 3. Prelitigation Advances

Metropolitan additionally argues that the amount in controversy should not be reduced by the prelitigation advances it made to Stanfield, i.e. that the amount in controversy should be the entire $100,000 UIM policy. "In general, affirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum." *Cortez Martine v. Ford Motor Co.*, 2019 WL 1988398, at *3 (E.D. Cal. May 6, 2019) (internal citations omitted). Metropolitan concedes that it has been unable to locate authority on potential offsets decided in the context of a defendant seeking removal. Dkt. 18 at 17. But it argues that Stanfield's claim is that he is entitled to the entire $100,000 available under his UIM policy and that the amount has been offset by the $50,000 it has already paid him. Further, Metropolitan argues that it retains the right to recoup overpayment if it is determined that Stanfield's claim is valued less than the advances it already paid to him. Thus, Metropolitan argues that the amount in controversy should be deemed the entire $100,000 UIM policy, not just the remaining $50,000.

The Court is not persuaded the potential offset establishes the entire $100,000 UIM policy as the amount in controversy. "Events occurring *subsequent* to the institution of suit which reduce the amount recoverable below the statutory limit" do not eliminate federal diversity jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938) (emphasis added). The offer of the $50,000 to Stanfield occurred prior to

the current lawsuit, leaving the remaining $50,000 of UIM coverage in controversy. The Court would necessarily have to decide the merits of this case to determine whether the amount in controversy is met if it had to evaluate Metropolitan's potential offset argument. *See Geographic Expeditions*, 599 F.3d at 1108. Stanfield's complaint plainly states that he is pursuing "claims for the remaining UIM benefits." Dkt. 1-1, ¶ 3.11. If the entire $100,000 UIM policy again becomes at issue, Metropolitan would again have the opportunity to remove the case to federal court. Metropolitan's prelitigation advances are thus not a part of the amount in controversy.

### 4. Aggregating Damages

Finally, Metropolitan argues that the damages between Hougland and Stanfield can be aggregated to satisfy the amount in controversy. Dkt. 18 at 18 (citing *Ali v. Progressive Direct Ins. Co.*, Case No. C19-1015 RSM, 2019 WL 4565495, at *2 (W.D. Wash. Sept. 20, 2019)). This Court has previously concluded that "aggregation has been permitted in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Ali*, 2019 WL 4565495, at *2 (citing *Synder v. Harris*, 394 U.S. 332, 335 (1969)). Metropolitan thus argues that the Court should find that Hougland and Stanfield's claims constitute a common and undivided interest because their contractual damages arise under a joint policy with an aggregate policy limit.

However, the plaintiffs in *Ali* brought suit together whereas Hougland and Stanfield have purposefully decided to bring separate claims. Hougland and Stanfield were previously united to enforce their rights under the UIM policy but chose to

voluntarily dismiss and refile separately. *See Hougland et al. v. Metropolitan Casualty Ins. Co.*, 3:20-cv-06137-TSZ, Dkts. 1-1, 2 (W.D. Wash. 2020). The Court cannot say that Hougland and Stanfield are united in litigation to enforce a single title or right in which they have a common undivided interest, unlike *Ali*. Their claims are therefore not aggregable to satisfy the amount in controversy.

The Court thus GRANTS Stanfield's motion to remand as Metropolitan has not established the amount in controversy by a preponderance of the evidence.

**B.  Attorney's Fees and Costs**

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "[T]he standard for awarding fees should turn on the reasonableness of the removal." *Id*. The plaintiff does not have to prove that the defendant's "action was frivolous, unreasonable, or without foundation," because "there is no basis here for a strong bias against fee awards." *Id*. at 138.

> The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to

afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Id*. at 140.

While Metropolitan's improper removal delayed the proceedings and increased Stanfield's costs of litigation, the Court is unable to conclude that an award of fees is warranted. Stanfield's complaint contains a demand of *Olympic Steamship* fees, which alludes to a claim of denial of coverage. *See* Dkt. 1-1 at 4 (praying "for an award of reasonable attorney's fees and costs, pursuant to *Olympic Steamship* and its progeny, and/or pursuant to contract law, common law or equity."). Based on a literal reading of these allegations, the Court is unable to conclude that it was objectively unreasonable to base removal on the possibility of an award of *Olympic Steamship* fees. Thus, Metropolitan avoids an award of fees in this matter based on one reasonable argument.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Stanfield's motion to remand, Dkt. 12, is **GRANTED**. The Clerk shall remand this action to Pierce County Superior Court and close this case.

Dated this 27th day of May, 2021.

BENJAMIN H. SETTLE
United States District Judge